UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:06-CV-17-V

| | |
|---|---|
| TEAM EJP RACING, LLP, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>DAVID DOLLAR and MORGAN-DOLLAR )<br>MOTORSPORTS, LLC, )<br>)<br>Defendants. )<br>) | MEMORANDUM and ORDER |

**THIS MATTER** is before the Court on Defendant David Dollar's Motion to Dismiss (doc. # 5), filed on February 3, 2006. After this Court, on May 19, 2006, ordered the Plaintiff to respond to the motion (doc. # 11), the Plaintiff filed its Response in Opposition (doc. # 12) on June 1, 2006. The Defendant filed his Reply (doc. # 15) on June 9, 2006.

The Defendant's Motion to Dismiss is ripe for disposition. For the reasons discussed below, this Court will **GRANT** the Defendant's Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL HISTORY

This action arises out of a dispute over the return of an "earnest money deposit." The Plaintiff entered into negotiations with David Dollar ("Dollar") and Morgan-Dollar Motorsports LLC ("Morgan-Dollar") for the purchase of all assets of Morgan-Dollar, including sponsorship fees and contracts, interests in the name "Morgan-Dollar Team 47," as well as the goodwill associated with Morgan-Dollar. During the course of these negotiations the Plaintiff paid $150,000 as an earnest money deposit to Morgan-Dollar.

The purpose of this payment is in dispute. The Plaintiff contends the money was to be credited towards the purchase price of the assets if the parties came to an agreement regarding the sale of Morgan-Dollar assets, and was to be refunded if they did not reach an agreement (Compl. ¶ 5). Defendant Dollar admits that the money was paid to Morgan-Dollar as earnest money, and agrees that the money was to be applied to the purchase price of Morgan-Dollar's assets. However, Dollar contends that the $150,000 was paid as a prerequisite to Morgan-Dollar's disclosure of confidential, proprietary information to the Plaintiff to protect Morgan-Dollar from damages should the Plaintiff fail to purchase the assets (Answer ¶ 5). The parties agree that there were no written communications between the Plaintiff and Morgan-Dollar concerning the conditions under which the money would be repaid to the Plaintiff. On May 27, 2005, the Plaintiff demanded return of the $150,000 in a written communication to Dollar. Morgan-Dollar has not returned the payment and denies any obligation to do so (Answ. ¶¶ 8,9).[1]

Defendant Dollar's involvement in the action is allegedly as follows: he is an officer of Morgan-Dollar; he is involved in directing Morgan-Dollar's business in Iredell County, North Carolina; the request to return the payment of $150,000 was directed to him; and Morgan-Dollar acted on instructions from Dollar in its decision not to return the money to the Plaintiff. Plaintiff's proposed Amended Complaint (doc. # 13) further alleges that at the time the dispute arose, Dollar owned 100% of Morgan-Dollar, was its president, and all negotiations regarding the

---

[1] The Court will not address the issue raised in ¶¶ 7 and 9 of the Complaint which allege that the Plaintiff sold a show truck to Morgan-Dollar for $20,000 and, at the time the Complaint was filed, had not received payment for this truck. The Defendants' Answer contends in ¶ 10 that Morgan-Dollar paid the amount owed in full prior to filing the Answer. As the subsequent pleadings in the matter fail to inform the Court of the incorrectness of this statement, the Court believes that this claim has been settled by the parties.

asset purchase were conducted between Dollar and the Plaintiff's president. (Prop. Am. Compl. ¶¶ 10, 11) In addition, the Plaintiff avers that Dollar will personally receive a "huge financial benefit" if the Defendants are not required to return the $150,000 at issue. (Prop. Am. Compl. ¶ 11)

## II. ANALYSIS

The Court first notes that the Plaintiff's Motion to Amend Complaint (doc. # 13), granted on June 26, 2006 (doc. # 17), does not moot the Defendant's Motion to Dismiss. The Defendant had the opportunity to address the new allegations set forth in the Amended Complaint in his Reply to the Plaintiff's Response to Motion to Dismiss, and did so. (see Def.'s Reply pp. 3-4) The Defendant, further, has neither opposed nor expressly consented to the Plaintiff's Motion to Amend. As discussed below, the new facts alleged in the Amended Complaint do not change the outcome of the Court's decision regarding the Motion to Dismiss.

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, a court must accept the factual allegations of the complaint as true, and must view the complaint in the light most favorable to the plaintiff. GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001); Hooper v. North Carolina, 379 F.Supp.2d 804, 811 (M.D.N.C. 2005). A motion to dismiss should not be granted unless the plaintiff can prove no set of facts to support his claim and entitle the plaintiff to relief. Parker, 247 F.3d at 548; Hooper 379 F.Supp. at 811.

The issue before the Court is whether the facts alleged by the Plaintiff allow for the assumption of personal liability of the individual Defendant Dollar for a potential obligation of the company defendant. The liability of managers and members of a foreign limited liability

company ("LLC") is governed by the laws of the state in which the LLC was formed. N.C. Gen. Stat. § 57C-7-01. Morgan-Dollar is an Arkansas LLC. The Court, hence, looks to Arkansas law regarding the issue of possible liability of Dollar.

Similar to North Carolina law, the Arkansas Small Business Entity Tax Pass Through Act ("Small Business Act") establishes that a member, manager, agent, or employee of an LLC is not liable for the debts and obligations of the LLC. Ark. Code Ann. § 4-32-304. The Code also makes it clear that a member of an LLC is "not a proper party to a proceeding by or against a limited liability company, by reason of being a member of the limited liability company." Ark. Code Ann. § 4-32-305. Although Arkansas case law on this point is sparse, the clear language of the Small Business Act leads to the conclusion that Dollar did not incur any personal liability simply by being a member of the LLC. In light of this finding, it is the Plaintiff's burden to present the Court with evidence to overcome this conclusion. Quinn-Matchet Partners, Inc. v. Parker Corp., 85 Ark. App. 143, 149 (Ark. App. 2004).

In a recent case, the Arkansas Supreme Court affirmed the application of the doctrine of "piercing the corporate veil" to a limited liability company. Anderson v. Stewart, 2006 W.L. 1118892 (Ark. 2006). However, in the instant case, the Plaintiff fails to allege any of the factors that trigger the equitable remedy of "piercing the corporate veil," such as commingling of funds, undercapitalization, or such control that Morgan-Dollar is simply the *alter ego* of Dollar. See e.g., Horton Dairy, Inc. v. U.S., 986 F.2d 286, 289 (8th Cir. 1993) (holding that generally, in determining whether an entity is an individual's *alter ego*, the courts apply a totality of the circumstances test, looking to factors like respect for the corporate or entity formalities, commingling of entity and personal funds and expenses, and the family relationship between the

officers/trustees and the individual.) Further, Arkansas law may classify an entity as the *alter ego* of an individual if the entity is managed and controlled by the individual as to constitute a sole proprietorship. Humphries v. Bray, 611S.W.2d 791, 793 (Ark.App. 1981); In Re Gillespie, 269 B.R. 383, 388 (E.D. Ark. 2001). However, the mere showing that Dollar owns 100% of Morgan-Dollar and was the only person involved in the asset purchase negotiations on Morgan-Dollar's side is insufficient to show the management and control of a sole proprietorship, as it is well settled that a corporation and its stockholders are separate and distinct entities even though a stockholder may be the owner of a majority of the stock in a corporation. Banks v. Jones, 239 Ark. 396, 399 (Ark. 1965); Parker Corp., 85 Ark. App. at 148.

Likewise, the Plaintiff's allegation in ¶ 11 of its proposed Amended Complaint that Dollar will receive a "huge financial benefit" if the funds are not returned, has no impact upon the Court's decision. This mere allegation does not constitute a showing of potential commingling of funds, as the Plaintiff does not aver that Dollar has deposited or will likely deposit the $150,000 into a personal account rather than the company's account. Finally, the Plaintiff does not allege that Dollar, individually, was a party to any agreement between the Plaintiff and Morgan-Dollar, or that he has assumed liability for any such agreement. An LLC by its nature needs actual persons to conduct its every day business. It is impossible for the LLC to act completely on its own without the use of employees or agents. The Court has no facts indicating the number of persons employed by Morgan-Dollar but it seems natural that the sole owner of Morgan-Dollar would be the person representing Morgan-Dollar in asset purchase negotiations. Conducting such negotiations is not outside the scope of Dollar's duties as officer and sole owner of Morgan-Dollar.

Further, although North Carolina law in N.C. Gen. Stat. § 57C-3-30(a) allows for personal liability by reason of a person's own acts or conduct, case law construing this provision has, for example, involved an instance where the defendant was accused of usury, unfair trade practices and violation of the Consumer Finance Act. State ex. rel. Cooper v. NCCS Loans Inc., 620 S.E.2d 697 (N.C. App. 2005), withdrawn from bound volume, superseded 624 S.E.2d 371. In the case at hand, the Plaintiff does not allege any circumstances similar in gravity to those in which the Cooper court invoked the provision. Moreover, Arkansas law, to which the Court adheres in this case for the reasons noted above, does not include a provision similar to that of North Carolina.

As the specific purpose of an LLC, or any other form of limited liability, is to *shield* the members, agents, and officers from liability which the entity incurs, the Plaintiff's allegations are insufficient to indicate any reasons to overcome the concept of limited liability.

Since the discovery process may unveil facts favorable to the Plaintiff's argument of "piercing the corporate veil," the Court grants Dollar's Motion to Dismiss without prejudice.

### III. CONCLUSION

**IT IS THEREFORE ORDERED THAT** the Defendant's Motion to Dismiss Defendant David Dollar is hereby **GRANTED WITHOUT PREJUDICE**, consistent with the terms of this Memorandum and Order. Accordingly, Plaintiff's claims against Defendant Dollar are **DISMISSED WITHOUT PREJUDICE**.

Signed: July 5, 2006

Richard L. Voorhees
United States District Judge